Den norske Bank v. Rudd                    CV-92-648-B    08/18/93

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Den norske Bank AS for itself and as
   successor-in-interest to Den norske
   Bank (U.S.) Banking Corp., formerly
   known as DnC America Banking Corp.
   and Nordic American Banking Corp.</u>

          v.                                   Civ. No. 92-648-B

<u>Philip J. Rudd</u>


**O R D E R**


     Plaintiff, Den norske Bank AS ("DNB"), commenced this

diversity action to recover $3,500,000 from defendant, Philip J.

Rudd ("Rudd"), as the unpaid principal amount of a promissory

note, plus interest and attorneys' fees.  Rudd now moves to

transfer this case to another venue pursuant to 28 U.S.C.A §

1404(a) (West 1976).[1]  For reasons discussed below, Rudd's motion

is denied.

_____

     [1] Section 1404(a) provides:  "For the convenience of parties
and witnesses, in the interest of justice, a district court may
transfer any civil action to any other district or division where
it might have been brought."

# I.  BACKGROUND

The facts relevant to the disposition of this motion are as follows.  In November 1983, Francis Greenburger and Hary Helmsley d/b/a 25 West 43rd Street Company ("Helmsley") entered into an agreement by which Greenburger leased the premises known as 23-31 West 43rd Street and 26-28 West 44th Street, New York, New York ("the Property") from Helmsley ("the Helmsley lease").  (Compl. Ex. 1.)  Two years later, in September 1985, DNB agreed to loan $3,500,000 to P.F. Equities Group ("PFE"), a New York general partnership in which Rudd and Greenburger were then partners.  (Schwartz Aff. ¶ 4.)  To evidence its obligation to repay the $3,500,000 loan, PFE executed and delivered a promissory note ("the Note"), payable on demand, in the amount of $3,500,000.  (Schwartz Aff. ¶ 4.)  Payment of the Note was originally guaranteed by Rudd and Greenburger and was secured by a mortgage on a leasehold interest held by Greenburger in the Property.  (Schwartz Aff. ¶ 4.)  However, in September 1990, Greenburger assigned his interest in the Helmsly lease to Rudd (Schwartz Aff ¶¶ 5-6), who, three months later, executed agreements whereby he assumed PFE's obligations under the Note and Greenburger's obligation under the mortgage.  (Schwartz Aff. P 4; Compl. Exs. 10-11.)  One of those agreements is a Promissory Note

2

Modification and Assumption Agreement, which provides:

> 9. Rudd agrees to submit to non-exclusive personal jurisdiction in the County of New York, State of New York in any action or proceeding arising out of the Note, the Second Mortgage or the Agreement and, in furtherance of such agreement, Rudd hereby consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over Rudd may be obtained within or without the jurisdiction of any court located in New York County . . . .

(Compl. Ex. 10.)

Rudd eventually failed to pay the real estate taxes for the Property, which were due on July 1, 1992, and the rent under the Helmsley Lease, which was due on July 31, 1992. (Schwartz Aff. ¶ 6.) DNB contends that these failures constituted separate events of default under the Helmsly Lease and/or the Mortgage. In the present action, DNB seeks to recover from Rudd on the Note.

## II. DISCUSSION

A. Arguments

Rudd raises several arguments in his motion to transfer venue to the Southern District of New York. First, he contends that the Promissory Note Modification and Assumption Agreement expressly designates New York as the appropriate forum. Second,

3

he maintains that New York law governs the case, and a federal court in New York would have an "inherent advantage" in construing and applying New York law. Third, he claims that New York is the "only convenient forum for the witnesses, as well as for the collection and presentation of evidence" in this case. Fourth, he argues that DNB's attempt to bring this case to New Hampshire is "inappropriate" in light of an "already-pending" suit in New York state court involving the "same parties and loan transaction." Finally, he asserts that "only New York bears a significant relation to the cause of action." I disagree.

B. Standard

District courts enjoy considerable discretion in deciding whether to transfer a case pursuant to section 1404(a). Norwood v. Kirkpatrick, 349 U.S. 29, 30 (1955); Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987); Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir.), cert. denied, 434 U.S. 860 (1977); McFarland v. Yegen, 699 F. Supp. 10, 15 (D.N.H. 1988). In exercising that discretion, district judges must consider the convenience of the parties and witnesses, the relative ease of access to documents needed for evidence, and the possibility of consolidation. See, e.g., Cianbro Corp., 814 F.2d at 11 ("[w]here identical actions are proceeding concurrently in

4

two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision"); Codex Corp., 553 F.2d at 737. While a plaintiff's choice of forum is an important consideration, it is not dispositive. See Norwood, 349 U.S. at 30-33; United States ex rel. LaValley v. First Nat'l Bank of Boston, 625 F. Supp. 591, 594 (D.N.H. 1985). Despite considering the appropriate mix factors, "there will often be no single right answer" as to where venue should lie. Codex, 553 F.2d at 737. But one thing is clear: Defendants seeking to transfer an action bear the "substantive burden" of having to show that these factors "predominate" in favor of transfer. Buckley, 762 F. Supp. at 439; accord Crosfield Hastech, Inc. v. Harris Corp., 672 F. Supp. 580, 589 (D.N.H. 1987); see also 1A James W. Moore et al., Moore's Federal Practice ¶ 0.345[5] (2d ed. 1993).

C. Application

1. Convenience of witnesses and access to documents

While Rudd contends that "it is self-evident that New York is the only convenient forum for the witnesses, as well as for the collection and presentation of evidence," he has failed to provide the identity or location of witnesses who would be inconvenienced. Nor has Rudd specified the location and

5

importance of the documents to be collected.  Such "amorphous allegations of need as to unnamed witnesses and unspecified documents are inadequate" to satisfy defendant's burden. Buckley, 762 F. Supp. at 439 (quoting Crosfield Hastech, Inc., 672 F. Supp. at 589); 15 Charles A. Wright et al., Federal Practice and Procedure §§ 3851, 3853 (2d ed. 1986).

  2. Forum selection clause

  Rudd argues that the loan documentation submitted by DNB "expressly designates New York as the appropriate forum" and should be accorded "substantial weight" in deciding whether to transfer the case.  I disagree.

  As noted above, a motion to transfer under section 1404(a) "calls on the District Court to weigh in the balance a number of case-specific factors."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988).  The existence of a forum selection clause is merely an additional component that figures in the court's calculus.  Id. at 30-31.  Here, contrary to Rudd's claims, the forum selection clause states that jurisdiction is not limited to courts in New York County.  See Promissory Note Modification and Assumption Agreement, Compl. Ex. 10 ("Rudd agrees to submit to non-exclusive personal jurisdiction in the County of New York, State of New York in any action arising out of the Note . . .,

6

Rudd hereby consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over Rudd may be obtained within or without the jurisdiction of any court located in New York County . . . "). Thus, his argument on this point is without merit.

### 3. Interpreting New York law

Since this is a diversity case, in which New York law will provide the substantive rules, Rudd claims there is an advantage in having it applied by a federal judges who sits in New York and is familiar with New York state law. While the desirability of trying a case in a district of a state whose law is to govern has been mentioned as a factor in some cases, see Van Dusen v. Barrack, 376 U.S. 612, 645 (1964), it has not been given "great weight, particularly when the applicable state law appears clear." Miller et al., supra, § 3854 (and cases cited therein). I find that to be the case here. And, as Rudd himself admits, "this Court is perfectly capable of interpreting and applying New York law."

### 4. Consolidation

Rudd argues that DNB's effort to bring this case in New Hampshire is inappropriate in light of an "already-pending" action in New York state court, which was begun by DNB and which

7

"involves the same parties and loan transactions."  He adds that courts have consistently recognized the wisdom of transferring a case to a forum in which a related case is pending, especially when the two cases involve the same parties and share common issues of law and fact.  However, since Rudd filed his motion to transfer, it appears that New York state action has been terminated.  But even if the case were active, I would still reject Rudd's argument.  A federal court has no power to transfer a federal case to state court even if a similar case is pending in that court.  See Moore et al., supra, ¶ 0.345[6-1] ("The power to transfer exists only between federal district courts. . . . If a federal district court believes that a state court . . . is a more convenient forum, it can not transfer the case to such a court . . .").  Since the two cases could never be consolidated by court order, no purpose would be served by transferring this case to another federal court.

    5.  <u>Connection to the forum</u>

Finally, Rudd contends that the New York, not New Hampshire, "bears a significant relation to the cause of action."  While New Hampshire's connection to this case is limited, that fact alone is insufficient to upset DNB's choice of forum.

## III.  **CONCLUSION**

For the foregoing reasons, I find that Rudd has not demonstrated that the balance of conveniences and the interest of justice warrant the transfer of this case to another court. Accordingly, Defendant Philip J. Rudd's Motion to Dismiss for Insufficiency of Process, or, in the Alternative, for Transfer to Another Venue for the Convenience of the Parties (document no. 2) is denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

August 18, 1993

cc:  John A. Rachel, Esq.
     Richard B. Couser, Esq.